**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

RHONDINE MELENDEZ, on behalf of herself
and All Others Similarly Situated,

Civil Action No. 23-cv-9532 FB-VMS

*Plaintiff,*

v.

RAAKA CHOCOLATE, INC.,

*Defendant.*


**DEFENDANT RAAKA CHOCOLATE, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED**
**COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**


**KAYSER & REDFERN, LLP**
515 Madison Avenue, 31st Fl.
New York, New York 10022
(212) 935-5057
*Attorneys for Defendant RAAKA CHOCOLATE, INC.*

## TABLE OF CONTENTS

Page

Table of Authorities ....................................................... iii

**POINT I**
**PLAINTIFF'S SECOND AMENDED COMPLAINT SHOULD BE DISMISSED FOR
LACK OF STANDING PURSUANT TO FED. R. CIV. P. 12(b)(1)** .............. 1

**POINT II**
**PLAINTIFF'S SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P.
12(b)(6) AS PLAINTIFF'S FAILURE INITIALLY TO NOTIFY DEFENDANT OF
HER ALLEGED WEBSITE ACCESS PROBLEMS BARS HER FROM QUALIFYING
FOR EQUITABLE RELIEF** ............................................... 4

**POINT III**
**PLAINTIFF HAS FAILED TO STATE A CLAIM PURSUANT TO FED. R. CIV. P.
12(b)(6) UNDER TITLE III OF THE ADA BECAUSE RAAKA'S WEBSITE IS NOT
A "PLACE OF PUBLIC ACCOMMODATION" SUBJECT TO THAT ACT** ..... 9

**POINT IV**
**THE COURT SHOULD DISMISS PLAINTIFF'S NYCHRL CLAIMS** ........... 13

    **A. Plaintiff's NYCHRL Claims Should Be Dismissed for the Same Reasons
    the Court Should Dismiss the ADA Claim** ........................... 13

    **B. The Court Should Decline to Exercise Supplemental Jurisdiction Over and
    Dismiss Plaintiff's NYCHRL Claims** ................................ 14

    **C. Plaintiff's NYCHRL Claims Should be Dismissed for Failure to State a Claim
    Insofar as They Seek Civil Penalties and Punitive Damages** .............. 15

**CONCLUSION** ....................................................... 16

i

## TABLE OF AUTHORITIES

Page

Amoco Production Co. v. Gambell
    480 U.S. 531, 542-544, 107 S. Ct. 1396, 94 L.Ed.2d 542 (1987) . . . . . . . . . . . . . .  5

Ashcroft v. Iqbal
    556 U.S. 519, 623 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Babbitt v. Sweet Home Chapter of Communities for a Great Oregon
    515 U.S. 687, 115 S. Ct. 2407, 2415, 132 L.Ed.2d 597 (1995)  11

Bell Atlantic Corp. v. Twombly
    550 U.S. 544, 570 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Calcano v. Swarovski North America Limited
    36 F.4th 68, 74 (2d Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Carnegie-Mellon University v. Cohill
    484 U.S. 343, 350, n.7 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association
of New England, Inc.
    37 F.3d 12, 19 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Chauca v. Abraham
    30 N.Y.3d 325, 334 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Erkan v. Blue & Cream, LLC
    2025 U.S. Dist. LEXIS 45223, 2025 WL 951349 (E.D.N.Y. 2025) . . . . . . . . . . . .  13

Feliz v. IHealth Labs, Inc.
    No. 23 Civ. 354 (JLR), 2024 WL 342701, at *5 (S.D.N.Y. Jan 30, 2024) . . . . . . .  4

Ford v. Schering-Plough Corp.
    145 F.3d 601, 612-614 (3rd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Graves v. Finch Pruyn & Co. Inc.
    457 F.3d 181, 184, n.3 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Hecht Co. v. Bowles
    321 U.S. 321, 329, 64 S. Ct. 587, 88 L.Ed. 754 (1944) . . . . . . . . . . . . . . . . . . . . . .  5, 6

ii

Home Ins. Co. v. American Home Prods. Corp.
    75 N.Y.2d 196, 203-204 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Jaquez v. Aqua Carpatica USA, Inc.
    No. 20 CV 8487, 2021 WL 3727094, at *7 (S.D.N.Y. Aug. 20, 2021) . . . . . . . . . . 14

Loadholt v. Oriental-Decor.Com, Inc.
    2024 U.S. Dist. LEXIS 2293, ___ F.Supp.3d ___,
    2024 WL 78243 (S.D.N.Y. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Magee v. Coca-Cola Refreshments USA, Inc.
    833 F.3d 530, 533-536 (5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Martin v. Brooklyn Bagel & Coffee Co.
    2024 U.S. Dist. LEXIS 209165, 11-13, 2024 WL 4827737 (E.D.N.Y. 2024) . . . . 8

Mendez v. Apple Inc.
    18 CV 7550, 2019 WL 2611168, at 3-4 (S.D.N.Y. Mar. 28, 2019) . . . . . . . . . . . . 14

Nken v. Holder
    556 U.S. 418, 434, 129 S. Ct. 1749, 173 L.Ed.2d 550 (2009) . . . . . . . . . . . . . . . . 6

Parker v. Metro. Life Ins. Co.
    121 F.3d 1006, 1010-1011 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Phillips v. 180 Bklyn Livingston, LLC
    No. 17 CIV 325, 2017 WL 2178430 *3 (E.D.N.Y. May 16, 2017) . . . . . . . . . . . . . 14

Rendon v. Extreme Networks, Inc.
    2025 U.S. Dist. LEXIS 61725, 19-22, 2025 WL 1004733 (S.D.N.Y. 2025) . . . . . . 8

Sookul v. Fresh Clean Threads, Inc.
    754 F.Supp.3d 395, 404-415 (S.D.N.Y. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Starbucks Corp. v. McKinney, et al.
    602 U.S. 339 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 8

United States v. Oakland Cannabis Buyers' Coop
    532 U.S. 483, 496 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Wahab v. White's Boots, Inc.
    202 U.S. Dist. LEXIS 146892, 18-28, 2024 WL 3909083 (S.D.N.Y. 2024) . . . . . . 8

Weinberger v. Romero-Barcelo
456 U.S. 305, 312-313 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

West Virginia v. EPA
597 U.S. 697, 142 S. Ct. 2587, 2607-2608 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . 12

Weyer v. Twentieth Century Fox Film Corp.
198 F.3d 1104, 1114-1115 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11


**Statutes**
28 CFR §36.104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. §1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. §1367 (c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

42 U.S.C. §12101 - §12213 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

42 U.S.C. §12181 - §12189 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

42 U.S.C. §12182 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. §12181(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

42 U.S.C. §12181(7)(J) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

42 U.S.C. §12182(b)(2)(A)(iv) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

42 U.S.C. §12183(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

42 U.S.C. §12188(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ADA Amendments Act of 2008, 110 P.L. 325, 122 Stat. 3553 . . . . . . . . . . . . . . . . . . . . . 12

BLACK'S LAW DICTIONARY 1060 (6th ed. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

FED. R. CIV. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 13

FED. R. CIV. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 6, 8, 9, 13

NYCHRL        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

NYSHRL ..................................................... 14

N.Y.C. Admin. Code, tit. 8, Ch. 1, §8-127(a) ................................... 15

N.Y. Exec. L. §297(4)(c)(vi) ................................................. 15

RAAKA CHOCOLATE, INC. ("Defendant" or "Raaka") respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff, RHONDINE MELENDEZ'S ("Plaintiff" or "Melendez") Second Amended Class Action Complaint ("SAC" or "Second Amended Complaint") pursuant to Rules 12(b)(1) and 12(b)(6) of the Fed. R. Civ. P.

## POINT I

### PLAINTIFF'S SECOND AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING PURSUANT TO FED. R. CIV. P. 12(b)(1)

In a meticulously written, well-reasoned, 22 page Order, the Court dismissed without prejudice Plaintiff's Second Amended Complaint and _sua sponte_ granted leave for Plaintiff to amend her complaint "…to correct all deficiencies in her pleadings."[1] The Court noted that:

> "Plaintiff only makes two allegations regarding her intent to return to Defendant's website: that she 'intends to attempt to access the [w]ebsite in the future to purchase products and services the [w]ebsite offers, and more specifically the Ginger Snap chocolate bar, if [the alleged issues are] remedied[,]' and that she 'intends to visit the [w]ebsite in the near future if it is made accessible.' Am. Compl. ¶¶29, 45. These conclusory allegations on their own are insufficient to allege that Plaintiff is at risk for a future injury from Defendant's website, and thus, fail to establish standing to sue for injunctive relief."

> "The amended complaint does not contain such factual allegations. Plaintiff does not offer any allegations as to the 'genesis for [her] sudden need or want' for Defendant's chocolate." [citation omitted]

---

[1] Plaintiff's amendments to her SAC are as follows:

Paragraph 21 – "because of its appealing flavor combination and health value."

Paragraph 22 – "Specifically, Raaka Chocolates are organic, vegan, and allergen friendly, conciseness [sic] due to her compromised state of living."

Paragraph 25 – "The Website also has more options for purchase than a retail store. Therefore, Plaintiff desired to buy the Raaka chocolate brand directly from their Website." [Underlined part amended.]

Paragraph 32 – "The Plaintiff does not like to waste her time revisiting a website until it has been remedied but once it has been she will do so."

Paragraph 42 – "…because of its appealing flavor combination and health value."

Paragraph 48 – "Plaintiff is a chocolate lover and often seeks out high-end chocolate for both its taste and health benefits. She believes that it has fewer artificial additives and a purer taste and Plaintiff needs to reduce her consumption of added sugar."

...

> "...Plaintiff's amended complaint also lacks allegations as to why Plaintiff specifically seeks chocolate from Defendant's website. For example, although Plaintiff alleges that Defendant 'focus[es] on crafting high-quality, organic, and non-GMO chocolate that is also gluten and soy-free[,]' Am. Compl. ¶¶23, 41, Plaintiff 'does not allege that [Defendant] is the only retailer that sells [high-quality and organic chocolate], or that [s]he has searched for similar [chocolates] but has been unable to find them elsewhere at a comparable price point'." Kayser Aff., Exhibit 3, p. 17.

Plaintiff's SAC addresses none of the issues quoted above in the Order.

The Order goes on to state:

> "Furthermore, although Plaintiff alleges that she 'wanted to purchase the Ginger Snap chocolate bar' because 'she was looking for an organic chocolate made with natural ingredients [,]' Am. Compl. ¶¶21-22, 40, Plaintiff does not allege any facts as to why she wished to purchase the Ginger Snap chocolate bar, or why the Ginger Snap chocolate bar was 'unique' and 'differentiated'." Kayser Aff., Exhibit 3, p. 18.

Plaintiff's SAC still does not address anything new regarding the Ginger Snap bar.

The Order also stated:

> "The frequency of Plaintiff's visits to Defendant's website is also relevant to the Court's standing analysis. Plaintiff only alleges that she visited Defendant's website twice, within two days of one another, and less than one month before filing this lawsuit. See Am. Compl. ¶¶20, 42; ECF No. 1. Without additional facts suggesting an intent to return to Defendant's website, two visits alone generally are not enough to find standing. [citations omitted]

> "Plaintiff argues that 'Defendant's challenge to Plaintiff's genuine intent to return to the [w]ebsite...misses the point entirely[,]' as 'Defendant must provide an <u>accessible</u> website that is available to Plaintiff twenty-four hours a day, seven days a week – as it is for sighted customers.' Pl.'s Opp. Mem. L. at 8 (emphasis in original). This argument does not address the critical question in the Court's standing inquiry – whether Plaintiff's conclusory allegations that she intends to return to Defendant's website have 'factual support[.]' <u>Calcano</u>, 36 F. 4th at 78. In fact, Plaintiff does not offer any

arguments in this motion that her alleged intent to return is genuine."
Kayser Aff., Exhibit 3, p. 19.

Since her first two alleged visits to Raaka's website on November 29, 2023, and November 30, 2023, Plaintiff does not allege in her SAC that she has made any other visits to Raaka's website or made any attempt to use it for almost two years now. Instead, she alleges in a new paragraph 32, of her SAC:

> "The Plaintiff does not like to waste her time revisiting a website until it has been remedied but once it has been she will do so."

The SAC adds nothing to bolster a finding that Melendez' alleged intent to return is genuine.

As the Court has noted, Raaka asserts its website does provide access to the visually impaired, and if Plaintiff does not visit Raaka's website once in a while over almost two years, how will she know whether she is able to use it?

Plaintiff does not allege that if she is not visiting Raaka's website herself, to determine its accessibility to her, she has anyone else visiting Raaka's website for her to determine its accessibility. So, her asserted allegation does nothing to alter the Court's conclusion that:

> "Because Plaintiff has not alleged facts to infer that she intends to return to Defendant's website, Plaintiff lacks standing to bring her ADA claim."

Accord, Loadholt v. Oriental-Décor.Com, Inc., 2024 U.S. Dist. LEXIS 2293, __ F.Supp.3d ___, 2024 WL 78243 (S.D.N.Y. 2024).

The Court's Order constitutes the law of the case. Nothing in the minimal amendments in Plaintiff's Second Amended Complaint should cause the Court to reconsider its Order.

3

## POINT II

### PLAINTIFF'S SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 12(b)(6) AS PLAINTIFF'S FAILURE INITIALLY TO NOTIFY DEFENDANT OF HER ALLEGED WEBSITE ACCESS PROBLEMS BARS HER FROM QUALIFYING FOR EQUITABLE RELIEF

Plaintiff's SAC still fails to allege she provided Raaka with any notice with respect to any website access issue she may have encountered with respect to accessiBe, Raaka's solution on its website for the visually impaired. Plaintiff's admitted failure to give any notice in her initial Complaint continued in her SAC, even though Raaka, since it first became aware of Plaintiff's alleged problems of access, repeatedly has expressed in writing[2] a willingness to work with her to address her alleged issues.

The only federal remedy the American Disabilities Act, ("ADA") provides to Plaintiff is equitable relief in the form of an injunction to be fashioned by the Court. Feliz v. IHealth Labs Inc., No. 23 Civ. 354 (JLR), 2024 WL 342701, at *5 (S.D.N.Y. Jan 30, 2024):

> "The ADA offers private plaintiffs the prospect of only injunctive relief, not compensatory damages." [citation omitted]

The United States Supreme Court's recent decision in Starbucks Corp. v. McKinney, et al., 602 U.S. 339 (2024), sets forth the equitable principles, which must be met in addition to the other required conditions in the ADA statutory framework, that bar Plaintiff's claim for equitable relief.

> "When Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity." Starbucks Corp. Id. at p. 103.

> "This Court has consistently employed this presumption when interpreting a wide variety of statutes that authorize preliminary and permanent injunctions. See e.g., United States v. Oakland

---

[2] Raaka's original Moving Papers, Exhibits B, C and D, sworn to April 11, 2024 ("Kayser Aff. First Motion") ¶¶3, 4 and 5. [ECF No 18-2 through 18-4]

Cannabis Buyers' Coop, 532 U.S. 483, 496, 121 S. Ct. 1711, 149 L.Ed.2d 722 (2001) (Controlled Substances Act); Romero-Barcelo, 456 U.S., at 312-313, 102 S. Ct. 1798 (Federal Water Pollution Control Act); Amoco Production Co. v. Gambell, 480 U.S. 531, 542-544, 107 S. Ct. 1396, 94 L.Ed.2d 542 (1987) (Alaska National Interest Lands Conservation Act); Hecht, 321 U.S., at 329, 64 S. Ct. 587, 88 L.Ed. 754 (Emergency Price Control Act).  Thus, absent a clear command from Congress, courts must adhere to the traditional four-factor test." Starbucks Corp. Id. at pp. 107-108.

42 U.S.C. §12101 - §12213, also known as the American with Disabilities Act, (the "ADA") and in particular, Sub Chapter III Public Services, 42 U.S.C. §12181 - §12189, Public Accommodations, specifies at §12188(a)(1) Enforcement, Availability of remedies and procedures, the following:

"…Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." (Emphasis added)

"(2) Injunctive relief

In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter."

The statute implies that where injunctive relief is sought, as in the case at bar, any entity covered by the ADA, unless an alleged impacted person has "actual notice" of an unwillingness to comply with the ADA, that the person claiming ADA coverage must first provide reasonable notice to the covered business with an opportunity to bring itself into compliance.  Thus, as in the case of Raaka, where it manifestly had attempted to comply with the ADA through the employment of accessiBe, Plaintiff has not been relieved of her requirement to provide a reasonable opportunity

for a business to address claimed defects in accessibility prior to filing a lawsuit and claiming legal fees.

The Court in Starbucks Corp., Id. at p. 108:

> "Crafting 'fair' and 'appropriate' equitable relief necessitates the exercise of discretion – the hallmark of traditional equitable practice. See Hect, 321 U.S., at 329, 64 S. Ct. 587, 88 L.Ed. 754 ('The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case')."
>
> ...
>
> "And, in exercising this discretionary authority, courts must 'be guided by sound [equitable] principles.' Nken v. Holder, 556 U.S. 418, 434, 129 S. Ct. 1749, 173 L.Ed.2d 550 (2009) (internal quotation marks omitted)."

The four-part test mandated for the invocation of an injunction set forth in Starbucks Corp., Id. at p. 103, for a preliminary injunction:

> "The traditional rule is that a plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" (Emphasis added)

While the current posture of the case at bar is a motion to dismiss, a prong of Raaka's motion to dismiss for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6) implicates the viability of what is Plaintiff's sole remedy under her federal claim, namely, injunctive relief. If Plaintiff does not qualify for injunctive relief, she does not have a claim upon which relief can be granted. Plaintiff has never contended she provided Raaka with any notice of her purported problems with accessing Raaka's website prior to filing her lawsuit or now prior to filing her SAC. In fact, the very first time Raaka was provided with the alleged specific problems,

Plaintiff herself, allegedly encountered was in her Amended Complaint filed on July 9, 2024[3], which are the same in her SAC.

Balancing the equities is another required test. Equitable principles normally require an allegedly aggrieved party first to give notice in an effort to remedy the issue giving rise to the grievance, reasonable notice being fundamental to procedural due process and the basic expectations of a functional society and, as such, is subsumed in the balancing of the equities. That is why the ADA excuses such notice only if it is demonstratable that such notice would be futile. The ADA statute places the burden upon the claimant to show such futility and, as such, requires Plaintiff affirmatively to plead futility, with an appropriate factual predicate sufficient to satisfy the pleading standards of Ashcroft v. Iqbal, 556 U.S. 619, 623 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), to relieve herself of the normal requirement for notice. Quite simply, one must do equity to receive equitable relief. Maxims of Equity, Oxford Reference, Oxford University Press.

While the burden should not be on Defendant to demonstrate that notice would not be futile, the record establishes that Raaka, years before the Plaintiff's filing of her lawsuit, was already affirmatively trying to comply with the ADA, and the record also establishes that had Plaintiff at any time notified Raaka of her alleged problems, it stood ready to accommodate Plaintiff's reasonable needs for website or other access to Raaka's products.[4]

In balancing the equities, prior to litigation and trying to stick a business with a claim for legal fees, providing a business first with some notice a potential customer is having a problem

---

[3] Based upon analysis of Plaintiff's now specified alleged website impediments, such impediments have in fact been determined not to exist and may explain why she has never taken up Raaka's open-ended offer to address any specific problems she may have had. [ECF No 26-8 and 26-9]

[4] Affidavit of Nathan Hodge in support of Defendant's Motion to Dismiss sworn to April 9, 2024, ¶5, Exhibit A, Raaka's first Motion to Dismiss. [ECF No 18-7]

navigating a website seems like a minimal effort compared with filing a lawsuit without any notice and effort informally to try to rectify an alleged problem.

Plaintiff's claim for an injunction also fails the public interest test. One of the four prongs of the equitable four-part test set forth in Starbucks Corp., supra, is that any injunction is in the public interest. Plaintiff and her counsel have manifestly failed that test.

As Defendant's initial moving papers[5] set forth in more detail, Plaintiff's law firm through Plaintiff and others has brought over 500 lawsuits against small businesses claiming failure of such small businesses to comply with website access requirements under the ADA. More recent cases also cite Plaintiff's law firm, Stein Saks, for its conduct. Rendon v. Extreme Networks, Inc., 2025 U.S. Dist. LEXIS 61725, 19-22, 2025 WL 1004733 (S.D.N.Y. 2025); Martin v. Brooklyn Bagel & Coffee Co., 2024 U.S. Dist. LEXIS 209165, 11-13, 2024 WL 4827737 (E.D.N.Y. 2024); and Wahab v. White's Boots, Inc., 2024 U.S. Dist. LEXIS 146892, 18-28, 2024 WL 3909083 (S.D.N.Y. 2024). While some of these suits may be or may have been meritorious, many, as in the case of Raaka, have obviously been brought under a cost of defense calculation simply to demand payment of money as a condition to resolution, regardless of whether a targeted business is in compliance or would be willing to adjust its website to become in compliance without the necessity of a lawsuit. It is in the public interest to protect small businesses from the peril of vexatious and costly claims when such businesses are willing to comply or are already in compliance and would make website adjustments without being sued and without the demand for payment of legal fees as a cost to resolve such claims.

Thus, the express articulation by a Court such as this one of the normal equitable requirements of reasonable notice to remedy any website defect as a condition precedent to a viable

---

[5] Raaka's Memorandum of Law in support of its first Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) pp. 5, Kayser Aff. Exhibit 2a.

litigation claim is in the public interest, unless it can be demonstrated that such notice would be futile. When a business such as Raaka has on its website been utilizing an auxiliary program such as accessiBe to comply with the ADA, such an effort is prima facie evidence that the business is sensitive to the plight of the disabled. For the Court to hold any business website that has in good faith manifestly attempted to comply with the ADA should be provided with reasonable notice and an opportunity to correct any actual impediment prior to giving rise to a viable ADA claim, would protect businesses, particularly small businesses, from abusive claims. Such a holding would also encourage businesses to make efforts to comply with the ADA on their website as protection against such suits, rather than encouraging costly and inefficient litigation first.

## POINT III

**PLAINTIFF HAS FAILED TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6) UNDER TITLE III OF THE ADA BECAUSE RAAKA'S WEBSITE IS NOT A "PLACE OF PUBLIC ACCOMODATION" SUBJECT TO THAT ACT**

Section 12182 of the ADA states:

> "(a) General rule
>
> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." (Emphasis added)

Section 12181(7) definition states:

> "As used in this subchapter:
>
> ...
>
> (7) Public accommodation
>
> The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce-
> (A) an inn, hotel, motel, or other place of lodging...
> a restaurant, bar, or other establishment serving food or drink;

9

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation." (Emphasis added)

The effective date for the ADA was 18 months after July 26, 1990, Historical and Statutory

Notes, U.S. Code Annotated, West Publishing Company.

In 1997, in Parker v. Metro. Life Ins. Co., 121 F.3d 1006, 1010-1011 (6th Cir. 1997) the

Sixth Circuit held that:

"As is evident by §12181(7), a public accommodation is a physical place and this Court has previously so held

...

Furthermore, we held that 'the prohibitions of Title III are restricted to 'places' of public accommodation...' Id. A 'place,' as defined by the applicable regulations, is a 'facility, operated by a private entity, whose operations affect commerce and fall within at least one of the' twelve 'public accommodation' categories.' Id. (quoting 28 C.F.R. §36.104). 'Facility,' in turn, is defined as all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located.' Id"

....

10

> Finally, the Court noted that 'plaintiffs' argument that the prohibitions of Title III are not solely limited to 'places' of public accommodation contravenes the plain language of the statute.' Id."

The 6th Circuit expressly disagreed with the 1st Circuit in <u>Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England, Inc.</u>, 37 F.3d 12, 19 (1st Cir. 1994) which concluded that Title III is not limited to the mere denial of physical access of public accommodation. Id. at p. 10, fn4. The reason the 6th Circuit refused to follow the 1st Circuit in <u>Carparts</u>, <u>Id</u>. at p. 12:

> "…the First Circuit disregarded the statutory canon of construction, <u>noscitur a sociis</u>. See <u>Babbitt v. Sweet Home Chapter of Communities for a Great Oregon</u>, 515 U.S. 687, 115 S. Ct. 2407, 2415, 132 L.Ed.2d 597 (1995). The doctrine of <u>noscitur a sociis</u> instructs that 'a…term is interpreted within the context of the accompanying words 'to avoid the giving on unintended breadth to the Acts of Congress.'" [citations omitted]

> "Black's Law Dictionary defines the term as:

> It is known from its associates…"

BLACK'S LAW DICTIONARY 1060 (6th ed. 1990)

> "The clear connotation of the words in §12181(7) is that public accommodation is a physical place. Every term listed in §12187(7) and subsection (F) is a physical place open to public access. The terms travel service, shoe repair service, office of an accountant or lawyer, insurance office, and professional office of a healthcare provider do not suggest otherwise."

Accord, <u>Ford v. Schering-Plough Corp.</u>, 145 F.3d 601, 612-614 (3rd Cir. 1998), holding "Confining 'public accommodation' to places is also in keeping with the Dept. of Justice's regulations….". <u>Weyer v. Twentieth Century Fox Film Corp.</u>, 198 F.3d 1104, 1114-1115 (9th Cir. 2000) "This context suggests that some connection between the good or service complained of and an actual physical place is required." <u>Parker</u>, at 1010-11 (Title III does not include "within its purview entities other than physical places.") <u>Magee v. Coca-Cola Refreshments USA, Inc.</u>, 833

F.3d 530, 533-536 (5th Cir. 2016) "Consistent with the statute's legislative history, all the examples provided by the DOJ are actual stores."

Significantly, in 2008, Congress amended the ADA[6], aware of the split in the Circuit Courts on this issue pertaining to the requirement of a physical location and access thereto, and did not address the issue at all, even though website commerce was a significant issue in 2008, some 18 years after the initial enactment of the ADA.

The major question doctrine, as articulated by the Supreme Court in West Virginia v. EPA, 597 U.S. 697, 142 S. Ct. 2587, 2607-2608 (2002), although being applied to administrative agencies in that case, nevertheless, should inform any court that when the Congress has visited a statute in which there is a split in authority, Congress' declination to expand the scope of such statute to cover the disputed issue should tell the courts that the courts should decline to legislate themselves and expand the scope of the statute. The Court in Sookul v. Fresh Clean Threads, Inc., 754 F. Supp.3d 395, 404-415 (S.D.N.Y. 2024), held that a "stand alone website" does not constitute a place of public accommodation.

Plaintiff's SAC fails in its ADA claim to distinguish the difference, which the applicable ADA statutory provisions made, between a general concept of something that falls into the category of a "public accommodation" and a "place of public accommodation" (Emphasis added). Thus, in paragraph 5 of the SAC, Plaintiff glibly refers to "…websites and other public accommodations…" but fails to allege that websites are places of public accommodation. But the SAC, paragraph 5 does state "…New York City law requires places of public accommodation…". Again, paragraph 16 of the SAC, erroneously citing 42 U.S.C. §12181(7)(J) alleges:

> "16. Defendant's Website, and the goods and services offered thereupon, is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. §12181(7)(j)."

---

[6] ADA Amendments Act of 2008, 110 P.L. 325, 122 Stat. 3553.

42 U.S.C. §12181(7)(J) does not mention "websites", rather it reads as follows:

> "(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education."

As the SAC does not even allege that Raaka's website is a "place" of public accommodation, the SAC fails to state a claim under the ADA upon which relief can be granted as this defect is at the heart of the legal issue.

Nor does the SAC allege, as the Court found in Erkan v. Blue & Cream, LLC, 2025 U.S. Dist. LEXIS 45223, 2025 WL 951349 (E.D.N.Y. 2025), that Raaka has a "physical store" or "information about the services in its physical locations…" which the Court found significant in its Opinion. Rather at most the SAC alleges at its paragraph 25 that:

> "The Website also has more options for purchase than a retail store." (Emphasis added)

The SAC does not allege whose "retail store" to which the SAC refers. Certainly, it does not allege that it refers specifically to a retail store owned or controlled by Raaka.

## POINT IV

## THE COURT SHOULD DISMISS PLAINTIFF'S NYCHRL CLAIMS

The SAC also sets forth additional Causes of Action under the NYCHRL and for declaratory relief. Affidavit of Leo Kayser, III sworn to December 3, 2025 ("Kayser Aff.") Ex. 1 SAC ¶¶75-87. The SAC implies that the Court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367. Id. ¶9. If the Court dismisses the ADA claim, these claims should be dismissed as the Court would lack jurisdiction over them.

**A.**    **Plaintiff's NYCHRL Claims Should Be Dismissed for the Same Reasons the Court Should Dismiss the ADA Claim**

The same legal standards for standing and stating an ADA claim under Rule 12(b)(1) and 12(b)(6) apply to the similar city law-based NYCHRL claim. Thus, the Court should dismiss the

13

NYCHRL claims for the same reasons discussed above for dismissing the ADA claim. See, e.g., Mendez v. Apple, Inc, supra, *9-10 (concluding that NYCHRL claims are governed by same standing requirements as ADA claims and dismissing the NYCHRL claims for lack of standing after dismissing the ADA claim on the same basis); Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 184, n.3 (2d Cir. 2006) ("a [New York] state-law disability-discrimination claim … survives or fails on the same basis as [plaintiff's] ADA claim").

**B.     The Court Should Decline to Exercise Supplemental Jurisdiction Over and Dismiss Plaintiff's NYCHRL Claims**

"The district court [ ] may decline to exercise supplemental jurisdiction over a claim . . . [once] the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350, n.7 (1988). Thus, courts in the Second Circuit quite commonly dismiss New York State Human Rights Law ("NYSHRL") and NYCHRL claims after dismissing the federal ADA claim. See, e.g., Jaquez v. Aqua Carpatica USA, Inc., No. 20 CV 8487, 2021 WL 3727094, at *7 (S.D.N.Y. Aug. 20, 2021) (declining to exercise jurisdiction and therefore dismissing NYCHRL claim after dismissing the visually-impaired plaintiff's ADA claim for lack of standing at the outset of the case); Phillips v. 180 Bklyn Livingston, LLC, supra *3, 9-10 (concluding that the defendant restaurant and defendant landlord were taking steps to fix the alleged "inaccessibility issues, thus vitiating the ADA's jurisdictional hook" and dismissing the state law NYSHRL, NYCHRL, and negligence claims because "the compelling reason to decline supplemental jurisdiction as presented by this case is the prevention of the misuse and exploitation of the ADA in a way that directly contravenes

14

Congressional intent and the remedial nature of the ADA. Congress consciously chose not to permit money damages in ADA actions such as this one, and tacking on state claims that permit damages is effectively creating an end-run on the ADA's purpose and Congress's intent.").

Thus, the Court should decline to exercise supplemental jurisdiction over, and dismiss, the NYCHRL claims.

**C.** **Plaintiff's NYCHRL Claims Should Be Dismissed for Failure to State a Claim Insofar as They Seek Civil Penalties and Punitive Damages**

If the Court finds that Plaintiff has standing, or that exercising supplemental jurisdiction may be warranted, the Court should still dismiss the NYCHRL claims, in part, because Plaintiff has failed to state a claim for several forms of relief under the NYCHRL.

The civil penalties and fines that Plaintiff seeks (Kayser Aff., Ex. 1 SAC ¶85) are not recoverable by her under the NYCHRL. Thus, the demand for such relief should be dismissed. *See* N.Y.C. Admin. Code, tit. 8, Ch. 1, § 8-127(a) ("Any civil penalties recovered pursuant to this chapter shall be paid into the general fund of the city."); N.Y. Exec. L. § 297(4)(c) (vi) ("assessing civil fines and penalties, in an amount not to exceed fifty thousand dollars, to be paid to the state by a respondent") (emphasis added).

A defendant must have "engaged in discrimination with willful or wanton negligence, or recklessness, or a 'conscious disregard of the rights of others or conduct so reckless as to amount to such disregard'" to be liable for punitive damages under the NYCHRL. Chauca v. Abraham, 30 N.Y.3d 325, 334 (2017) (quoting Home Ins. Co. v. American Home Prods. Corp., 75 N.Y.2d 196, 203-204 (1990)). Plaintiff does not allege any non-conclusory facts that could warrant punitive damages, and the demand for such relief should be dismissed.

## CONCLUSION

Either this Court should find Plaintiff lacks standing, or the Court should dismiss with prejudice Plaintiff's claims for failure to state a claim upon which relief can be granted.

Dated: New York, New York
       December 3, 2025

Respectfully Submitted,

KAYSER & REDFERN, LLP

By: _____
LEO KAYSER, III (LK 3550)
515 Madison Avenue, 31st Floor
New York, NY 10022
Tel: (212) 935-5057
lkayser@515law.com
**ATTORNEYS FOR DEFENDANT**


TO:    Rami Salim, Esq.
       STEIN SAKS, PLLC
       One University Plaza, Suite 620
       Hackensack, NJ 07601
       Tel: (201) 282-6500 ext. 124
       rsalim@steinsakslegal.com
       **ATTORNEYS FOR PLAINTIFF**