UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RHONDINE MELENDEZ, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>      vs.<br><br><br>RAAKA CHOCOLATE, INC.,<br><br><br>                    Defendant. | Case No.: 23-cv-9532-FB-VMS |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT RAAKA CHOCOLATE, INC.'S MOTION TO DISMISS**
**THE SECOND AMENDED COMPLAINT**

**STEIN SAKS, PLLC**

*/s/ Rami Salim*
Rami Salim, Esq.
One University Plaza, Suite 620
Hackensack, NJ 07601
Ph: 201-282-6500
Fax: 201-282-6501
rsalim@SteinSaksLegal.com

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................... 1

II. FACTUAL BACKGROUND .................................................................................... 2

III. STANDARD OF REVIEW ....................................................................................... 3

IV. LEGAL ARGUMENT ............................................................................................... 5

    *A.* ***PLAINTIFF HAS ESTABLISHED INJURY-IN-FACT AND THUS HAS ARTICLE III STANDING*** ................................................................................. 5

    *B.* ***DEFENDANT'S "NOTICE AND CURE" PREREQUISITE FINDS NO SUPPORT IN THE ADA OR NYCHRL*** ................................................................. 6

    *C.* ***DEFENDANT'S CONTENTION THAT A WEBSITE IS NOT A PLACE OF PUBLIC ACCOMMODATION IS CONTRARY TO THE STATUTE AND CONTROLLING CASE LAW*** ................................................................................. 9

    *D.* ***THE NYCHRL CLAIMS ARE INDEPENDENTLY VIABLE AND SHOULD PROCEED AND THE DECLARATORY JUDGMENT CLAIM SHOULD NOT BE DISMISSED*** ................................................................................. 11

V. CONCLUSION ....................................................................................................... 14

# **TABLE OF AUTHORITIES**

### CASES

*Andrews v. Blick Art Materials, LLC,* No. 17-CV-767 (E.D.N.Y. Aug. 1, 2017) .................... 9, 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................ 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................ 4

*Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000) ....................................................... 7

*Calcano v. Swarovski N. Am. Ltd*., 36 F.4th 68 (2d Cir. 2022) ..................................................... 5, 6

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016) ...................................................................................................... 3

*Catzin v. Thank You & Good Luck Corp*., 899 F.3d 77 (2d Cir. 2018) ....................................... 12

*Chavez v. L2 Liu Inc*., No. 20-cv-1388, Report & Recommendation (E.D.N.Y. Feb. 26, 2021) 7, 8

*Cleveland v. Caplaw Enters.*,
   448 F.3d 518 (2d Cir. 2006) .................................................................................................... 4

*Del-Orden v. Bonobos, Inc*., No. 17-cv-2744, 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017) ..... 10

*Dow Jones & Co. v. Harrods Ltd*., 346 F.3d 357 (2d Cir. 2003) .................................................. 13

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
   871 F. Supp. 2d 143 (E.D.N.Y. 2012) ..................................................................................... 4

*Dudley v. Hannaford Bros. Co*., 333 F.3d 299 (1st Cir. 2003) ....................................................... 7

*Foster v. FEMA*,
   128 F. Supp. 3d 717 (E.D.N.Y. 2015) ..................................................................................... 4

*Goodwin v. C.N.J., Inc*., 436 F.3d 44 (1st Cir. 2006) .................................................................... 8

*Harty v. West Point Realty, Inc*., 28 F.4th 435 (2d Cir. 2022) ....................................................... 6

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ............................................................. 5, 6

*Haynes v. Dunkin' Donuts LLC*, 741 F. App'x 752 (11th Cir. 2018) .......................................... 10

*In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726 (2d Cir. 1993) .......................................... 13

*Katz v. Donna Karan Co.*, L.L.C.,
 872 F.3d 114 (2d Cir. 2017) ................................................................................................... 3

*Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013) ........................................... 5, 6

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009) ....................................... 11, 12

*Makarova v. United States*,
 201 F.3d 110 (2d Cir. 2000) ................................................................................................... 3

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102 (2d Cir. 2013) ................. 11, 12

*National Federation of the Blind v. Scribd, Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015) ................ 9, 11

*Nechis v. Oxford Health Plans, Inc.*,
 421 F.3d 96 (2d Cir. 2005) ..................................................................................................... 4

*Niagara Mohawk Power Corp. v. Hudson River–Black River Regulating Dist.*, 673 F.3d 84 (2d
 Cir. 2012) .............................................................................................................................. 13

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*,
 595 F.3d 86 (2d Cir. 2010) ..................................................................................................... 4

*Packer v. Raging Capital Mgmt., LLC*,
 242 F. Supp. 3d 141 (E.D.N.Y. 2017) .................................................................................... 4

*Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999) ........................................ 9, 11

*Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133 (9th Cir. 2002) ........................................ 7

*Robles v. Domino's Pizza, LLC,* 913 F.3d 898 (9th Cir. 2019) .................................................... 10

*Steger v. Franco, Inc.*, 228 F.3d 889 (8th Cir. 2000) ..................................................................... 7

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .................................................................. 5, 6

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) .......................................................................... 13

**STATUTES**

28 U.S.C. § 1367(c) ..................................................................................................................... 12

28 U.S.C. § 2201(a) ..................................................................................................................... 12

42 U.S.C. § 12182(a) ..................................................................................................................... 9

42 U.S.C. § 12188(a)(1) ................................................................................................................. 8

42 U.S.C. § 2000a-3(a) .................................................................................................................. 8

iii

N.Y.C. Admin. Code § 8-102. ........................................................................................ 11

N.Y.C. Admin. Code § 8-107(4)................................................................................... 11

N.Y.C. Admin. Code § 8-130(a)–(b). ........................................................................... 11

N.Y.C. Admin. Code § 8-502(c)..................................................................................... 8

**OTHER AUTHORITIES**

ADA Education and Reform Act of 2017, H.R. 620, 115th Cong. § 3 .......................... 8

**RULES**

Fed. R. Civ. P. 12(b)(1).................................................................................................. 3

Fed. R. Civ. P. 12(b)(6).................................................................................................. 4

I.      **<u>INTRODUCTION</u>**

      Defendant's motion asks this Court to dismiss a meritorious website accessibility case by recasting well-pled, concrete injuries as conjecture and by importing threshold requirements that neither the ADA nor the NYCHRL impose. The Second Amended Complaint ("SAC") alleges that Plaintiff, who is blind and relies on screen-reader technology, encountered specific, repeated barriers on Defendant's commercial website while attempting to obtain the same goods and services Defendant offers to the public. Those barriers denied Plaintiff full and equal access and continue to do so today. Plaintiff pleads (i) multiple unsuccessful visits identifying the precise accessibility failures at issue, (ii) an intent to return to the website to purchase goods once it is accessible, and (iii) a real and immediate risk of repeated injury because Defendant's noncompliance persists. That is more than sufficient to establish Article III standing and to state claims for injunctive and related relief.

      Defendant's remaining arguments fare no better. Its mootness theory rests on attorney argument and selective assertions about supposed "fixes," not on competent evidence demonstrating that the violations have been fully remedied and are unlikely to recur. Its "notice-and-cure" argument invents a prerequisite that does not exist in Title III and is inconsistent with the remedial scheme Congress enacted. And its cramped view of what constitutes a "place of public accommodation" ignores that Defendant's website is a gateway through which it offers, markets, and sells goods to the public—precisely the kind of commercial activity the ADA and NYCHRL are designed to make accessible. At a minimum, Defendant's factual challenges underscore why dismissal at the pleadings stage is improper and why discovery should proceed.

      The SAC cures the deficiencies identified in prior motion practice and presents a straightforward claim: Defendant runs a public-facing commercial website that is not accessible

1

to blind consumers, despite readily achievable fixes and years of industry guidance explaining how to implement them. Plaintiff has experienced concrete harm, remains subject to an imminent risk of future harm, and seeks the modest relief the statutes authorize—an injunction requiring Defendant to make its digital storefront accessible and nondiscriminatory. The motion to dismiss should be denied in its entirety and the action permitted to proceed to discovery.

**II.    FACTUAL BACKGROUND**

Plaintiff Rhondine Melendez is a resident of Kings County who is blind and requires screen-reading software to navigate websites. The Second Amended Complaint alleges that Defendant owns and operates the public-facing website through which it offers goods and services that constitute a place of public accommodation under Title III. SAC ¶¶ 13–16.

The pleading explains that Defendant's website is used by consumers to browse products, obtain pricing and product information, and complete purchases for delivery nationwide, including in New York. SAC ¶¶ 18–19, 40–41. It further alleges that Defendant markets an array of chocolate products and promotes free shipping and a subscribe-and-save program offering a ten percent discount, which motivated Plaintiff to attempt to buy directly from the website. SAC ¶¶ 24–25, 44.

Plaintiff alleges two specific attempts to purchase a Ginger Snap chocolate bar on November 29 and 30, 2023, undertaken because of her interest in high-quality organic chocolate with health benefits. SAC ¶¶ 20–23, 42–45. During those visits, her screen reader encountered discrete accessibility barriers that impeded navigation and checkout, including identical alternative text for different product images, interactive elements functioning as buttons without proper roles, missing or improperly coded landmarks, an auto-expanding navigation menu, and broken links

2

that redirected her to an error page without announcement by the screen reader. SAC ¶ 46(a)–(e). As a result, Plaintiff was unable to complete the transaction. SAC ¶¶ 26–27.

The SAC alleges concrete harm, ongoing deterrence, and an intent to return once the barriers are removed. It pleads that Defendant's denial of full and equal access caused injury in fact, that Plaintiff intends to attempt future purchases when the site is accessible, and that she remains deterred by continuing inaccessibility. SAC ¶¶ 29–32, 47–52. The SAC also alleges that conformance with WCAG 2.1 and periodic testing are required to achieve and maintain accessibility, and seeks injunctive relief and related remedies accordingly. SAC ¶¶ 53, 55–59, 60–66, 88–90.

### III.  STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. The Second Circuit draws a distinction between two types of Rule 12(b)(1) motions challenging subject matter jurisdiction: facial challenges and fact-based challenges. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *see also Katz v. Donna Karan Co.*, L.L.C., 872 F.3d 114, 119 (2d Cir. 2017). A facial challenge is "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Carter*, 822 F.3d at 56. Under a facial challenge, a plaintiff must "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." Id. at 56. In order to make that determination, a court must accept the complaint's allegations as true "and draw[ ] all reasonable inferences in favor of the plaintiff." *Id.* at 57 (citation omitted).

3

When reviewing a motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The complaint must allege "a plausible set of facts sufficient to raise a right to relief above the speculative level. *Foster v. FEMA*, 128 F. Supp. 3d 717, 722 (E.D.N.Y. 2015) (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))) (internal quotations omitted). A claim is plausible on its face when it sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Packer v. Raging Capital Mgmt., LLC*, 242 F. Supp. 3d 141, 146 (E.D.N.Y. 2017) (quoting *Iqbal*, 556 U.S. at 663)(internal quotations omitted). This does not require a heightened pleading of factual specifics," *see Foster*, 128 F. Supp. 3d at 722 (quoting *Twombly*, 550 U.S. at 570)(internal quotations omitted), but a complaint must set forth more than "an unadorned, the-defendant-unlawfully-harmed-me accusation[,]" *see DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143, 161 (E.D.N.Y. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)) (internal quotations omitted). A complaint that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions devoid of further factual enhancement" will not suffice either. *DPWN Holdings*, 871 F. Supp. 2d at 161 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotations omitted). Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *DPWN Holdings*, 871 F. Supp. 2d at 161 (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted).

## IV.   LEGAL ARGUMENT

### A.   PLAINTIFF HAS ESTABLISHED INJURY-IN-FACT AND THUS HAS ARTICLE III STANDING

Defendant's standing attack does not comport with controlling precedent. Article III requires a concrete injury, causation, and redressability. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–26 (2021). A blind consumer who twice attempted to buy goods from a commercial website and was blocked by specific accessibility barriers alleges precisely the kind of concrete, particularized injury that satisfies *TransUnion*. 594 U.S. at 424–26.

The Supreme Court has long recognized that statutory denials of equal access and truthful information inflict cognizable, real-world harms. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372–74 (1982). That principle applies here. Plaintiff alleges an inability to navigate, select, and check out on Defendant's website because of identifiable barriers that he faced while using his screen reader, which is a denial of the equal access the ADA secures. *Havens Realty* confirms that such injuries are concrete. 455 U.S. at 372–74.

The Second Circuit's framework removes any doubt. A Title III plaintiff has standing when she alleges a past ADA injury, a reasonable inference that the discriminatory conditions will persist, and intent to return. *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (reaffirming *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188–89 (2d Cir. 2013)). *Calcano* is not a weapon for defendants who flout accessibility; it is a filter for conclusory, copy-and-paste pleadings. Plaintiff's amended allegations go far beyond boilerplate. She pleads two dated visits, concrete barriers that blocked checkout, and a plan to return to complete a purchase once the website complies. That satisfies *Calcano* and *Kreisler*. *Calcano*, 36 F.4th at 74–78; *Kreisler*, 731 F.3d at 188–89.

Defendant's reliance on *Harty v. West Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022), misreads that decision and the SAC. *Harty* involved a self-styled tester who visited a hotel website without any intent to travel or use the missing accessibility information. The Second Circuit found no concrete injury because the plaintiff disclaimed any real intent to return . 28 F.4th at 443–45. This case is different in every way that matters. Plaintiff tried to buy Defendant's goods, encountered specific barriers during checkout, remains deterred by those barriers, and intends to return when access is equal. Those facts satisfy *TransUnion*'s concreteness requirement and fit squarely within the Second Circuit's intent-to-return and deterrence framework. *Harty*, 28 F.4th at 443–45; *Calcano*, 36 F.4th at 74–78; *Kreisler*, 731 F.3d at 188–89.

Defendant fares no better in suggesting that future injury is speculative. A plaintiff who personally encountered accessibility barriers and who plausibly pleads intent to return faces a real and immediate threat of repeated harm. That is exactly what *Kreisler* holds, and it is consistent with the Supreme Court's guidance on standing in *TransUnion* and *Havens Realty*. *Kreisler*, 731 F.3d at 188–89; *TransUnion*, 594 U.S. at 424–26; *Havens Realty*, 455 U.S. at 372–74. The injunction Plaintiff seeks would redress that harm by requiring Defendant to remove the barriers and maintain compliance. That is enough for standing.

Because Plaintiff alleges past denial of equal access, ongoing deterrence, and a concrete intent to return that an injunction would remedy, Article III is satisfied and the motion to dismiss should be denied.

### B. DEFENDANT'S "NOTICE AND CURE" PREREQUISITE FINDS NO SUPPORT IN THE ADA OR NYCHRL

Defendant's second argument fails at the threshold because Title III contains no pre-suit notice or opportunity-to-cure requirement for private plaintiffs. Congress specified the

6

enforcement mechanism in 42 U.S.C. § 12188(a)(1), which incorporates the "remedies and procedures set forth in" 42 U.S.C. § 2000a-3(a) and no more. The text omits § 2000a-3(c) and its state-notice provision, which confirms that Congress chose not to condition a Title III suit on advance notice.

Courts have repeatedly recognized the textual choice Congress made in § 12188(a)(1). The Ninth Circuit squarely holds that Title III incorporates § 2000a-3(a) but not § 2000a-3(c), so a private plaintiff need not provide pre-suit notice before filing an ADA Title III action. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 832–34 (9th Cir. 2000). Appellate courts also interpret § 12188(a)(1)'s "futile gesture" clause to mean that a plaintiff with actual knowledge of barriers need not undertake additional formalities or repeat attempts where the public accommodation does not intend to comply. *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 305–06 (1st Cir. 2003); *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136–38 (9th Cir. 2002); *Steger v. Franco, Inc.*, 228 F.3d 889, 892–94 (8th Cir. 2000). Here, Defendant has failed to even acknowledge that its Website is inaccessible, let alone fix it. It would clearly be futile for Plaintiff to demand Defendant fix its Website, as it has already had two years to do so and has failed to make any changes whatsoever.

Where defendants have asked courts in this Circuit to graft a notice prerequisite onto Title III, judges have rejected the invitation. The Eastern District of New York has stated plainly that "no pre-suit notice is required," noting that a 2017 House bill that would have imposed notice and cure passed the House but was never enacted. *Chavez v. L2 Liu Inc.*, No. 20-cv-1388, Report & Recommendation at 2 n.4 (E.D.N.Y. Feb. 26, 2021). That legislative history cuts against Defendant. When Congress considers a notice-and-cure amendment but does not enact it, courts

7

should not impose one by judicial fiat. See ADA Education and Reform Act of 2017, H.R. 620, 115th Cong. § 3 (passed House, received in Senate Feb. 26, 2018, not enacted).

Defendant's reliance on the Civil Rights Act's Title II notice provision misreads the statutory cross-reference. Section 12188(a)(1) adopts the remedies and procedures of § 2000a-3(a), which authorizes preventive injunctive relief in private suits, but it does not import § 2000a-3(c)'s state-notice requirement. 42 U.S.C. § 12188(a)(1); 42 U.S.C. § 2000a-3(a). The First Circuit has summarized the point succinctly in the course of describing Title III's remedial scheme: § 12188(a)(1) incorporates § 2000a-3(a) and thus confines private relief to injunctions, which presupposes continuing harm rather than pre-suit formalities. *See Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 48–49 (1st Cir. 2006).

The New York City Human Rights Law likewise contains no pre-suit notice prerequisite. It creates a private right of action and, once suit is filed, requires service of the complaint on the City Commission on Human Rights and the Corporation Counsel within ten days. N.Y.C. Admin. Code § 8-502(c). That is a post-filing service requirement, not a condition precedent to suit.

Even if the Court were inclined to consider equitable notice concepts, Defendant's position still fails. The complaint itself provides detailed, written notice of the specific barriers and the requested injunctive relief. Title III's structure already protects businesses from unfair surprise by limiting private relief to injunctions and fees while allowing prompt voluntary remediation. *See* 42 U.S.C. § 12188(a)(1). Congress weighed those equities and did not require a pre-suit demand. Courts in this District have acknowledged the same while declining to invent extra-textual hurdles. *Chavez*, No. 20-cv-1388, R. & R. at 2 n.4.

8

Because neither Title III nor the NYCHRL imposes a pre-suit notice or cure requirement, and because Congress declined to enact one despite considering it, the Court should reject Defendant's second argument and allow Plaintiff's claims for equitable relief to proceed.

### C. DEFENDANT'S CONTENTION THAT A WEBSITE IS NOT A PLACE OF PUBLIC ACCOMMODATION IS CONTRARY TO THE STATUTE AND CONTROLLING CASE LAW

Title III prohibits discrimination by places of public accommodation in the "full and equal enjoyment of the goods [and] services" they offer. 42 U.S.C. § 12182(a). The Second Circuit has long read this language to reach the goods and services of covered businesses even when those goods and services are not confined to a bricks-and-mortar site. In *Pallozzi v. Allstate Life Insurance Co.*, the court held that Title III protects equal access to an insurer's "goods and services," reasoning that the statute "governs a broader class of transactions than those occurring on site." *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28, 32–33 (2d Cir. 1999).

Federal courts applying *Pallozzi* have recognized that a business's commercial website is either itself a place of public accommodation or, at minimum, a service, privilege, or advantage of a public accommodation that must be provided on equal terms. In *Andrews v. Blick Art Materials, LLC*, Judge Weinstein concluded that Title III applies to a retailer's web store because the statute's focus on equal access to "goods and services" is not limited to physical entry and because excluding websites would "run afoul of the ADA's broad remedial purpose." *Andrews v. Blick Art Materials, LLC,* No. 17-CV-767, slip op. at 20–34 (E.D.N.Y. Aug. 1, 2017). Multiple courts have reached the same conclusion for online-only platforms. In *National Federation of the Blind v. Scribd, Inc.*, the District of Vermont denied a motion to dismiss and held that an e-book subscription service plausibly falls within several Title III categories, such as a "service establishment" and a "place of exhibition or entertainment." *National Federation of the Blind v. Scribd, Inc.*, 97 F. Supp. 3d 565, 567–76 (D. Vt. 2015).

9

Appellate authority is in accord that Title III covers the services a public accommodation offers through its website. The Ninth Circuit in *Robles v. Domino's Pizza, LLC* held that Domino's website and app must be accessible because the ADA regulates the services "of" a public accommodation and does not require that those services be provided "in" a physical space. *Robles v. Domino's Pizza, LLC,* 913 F.3d 898, 905–06 (9th Cir. 2019). The Eleventh Circuit likewise reversed dismissal where a restaurant's website allegedly impeded access to store goods and services, recognizing a sufficient nexus between the website and the brick-and-mortar locations. *Haynes v. Dunkin' Donuts LLC*, 741 F. App'x 752, 753–54 (11th Cir. 2018).

Defendant may cite outlier district decisions suggesting that a website, standing alone, is not a place of public accommodation. But those cases neither bind this Court nor square with *Pallozzi*'s text-driven emphasis on access to "goods and services." Indeed, other Southern and Eastern District decisions have expressly rejected a physical-presence limitation and applied Title III to commercial websites, including those tightly integrated with physical retail operations. *See, e.g., Del-Orden v. Bonobos, Inc*., No. 17-cv-2744, 2017 WL 6547902, at *6–*9 (S.D.N.Y. Dec. 20, 2017); *Andrews*, slip op. at 20–34.

Even under the narrower "nexus" approach, Defendant's position fails. Courts holding that a website must be accessible when it serves as a gateway to a business's goods and services have done so precisely because the website is a service of the covered public accommodation. *Robles*, 913 F.3d at 905–06; *Haynes*, 741 F. App'x at 753–54. Where a retailer markets products, provides pricing and product information, and facilitates transactions through its site, inaccessible design denies equal access to those services. That is discrimination within the meaning of § 12182(a), regardless of whether the plaintiff stands inside a store or shops from home.

10

Finally, district courts addressing online-only businesses have persuasively explained why excluding websites would create an arbitrary loophole that swallows the statute's promise of equal participation in the modern marketplace. *Scribd*, 97 F. Supp. 3d at 574–76. The statutory text, read in light of *Pallozzi*, forecloses that loophole by focusing the analysis on the goods and services the business offers to the public. 198 F.3d at 32–33.

Because the ADA regulates access to the goods and services of public accommodations and because Defendant's website is a primary channel through which those goods and services are offered, the Court should reject the argument that the site falls outside Title III and deny the motion on this ground.

### D. THE NYCHRL CLAIMS ARE INDEPENDENTLY VIABLE AND SHOULD PROCEED AND THE DECLARATORY JUDGMENT CLAIM SHOULD NOT BE DISMISSED

Defendant's attempt to dispose of the NYCHRL claims by piggybacking on its ADA arguments ignores both the statute's text and controlling Second Circuit guidance. The City Council has directed courts to construe the NYCHRL "liberally" to accomplish its "uniquely broad and remedial purposes," and to construe exceptions "narrowly." N.Y.C. Admin. Code § 8-130(a)–(b). That command requires analysis separate from and more protective than federal law. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109–13 (2d Cir. 2013); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).

The NYCHRL expressly prohibits disability discrimination in "any place or provider of public accommodation." N.Y.C. Admin. Code § 8-107(4). "Place or provider of public accommodation" includes "providers, whether licensed or unlicensed, of goods [and] services" and "places, whether licensed or unlicensed, where goods [and] services … are extended, offered, sold, or otherwise made available." N.Y.C. Admin. Code § 8-102. That capacious definition easily encompasses a commercial website through which a retailer markets products, provides product

11

information and pricing, and sells goods to consumers. See § 8-102; § 8-130(a)–(b). The statute's text and liberal construction mandate foreclose a cramped reading tied to physical entry.

Defendant's threshold standing objection does not defeat NYCHRL claims pursued in federal court where, as here, the complaint plausibly alleges concrete past injury, continuing deterrence, and intent to return. Federal Article III requirements govern in federal court, but once those are met, the NYCHRL's broader merits standard applies. *Mihalik*, 715 F.3d at 109–13; *Loeffler*, 582 F.3d at 278. Under the NYCHRL, the focus is whether Plaintiff was treated "less well" or denied equal enjoyment because of her disability, and whether the requested relief is appropriate in light of the statute's remedial purpose. That standard is satisfied by allegations of specific screen-reader barriers that blocked checkout on a commercial website. *See* N.Y.C. Admin. Code §§ 8-102, 8-107(4), 8-130(a).

Finally, even if the Court were to dismiss the ADA claim, it should not reflexively discard the NYCHRL claims. Supplemental jurisdiction turns on discretion, not compulsion, and depends on considerations of judicial economy, convenience, fairness, and comity. 28 U.S.C. § 1367(c). Where the case has progressed beyond an initial pleading skirmish, the Second Circuit has cautioned against automatic declination. *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85–87 (2d Cir. 2018). Here, the pleadings, motion practice, and the overlap of facts and remedies strongly favor retaining the NYCHRL claims even if any federal claim were pared back.

Additionally, Defendant's challenge to the declaratory judgment claim ignores the Act's purpose and the court's broad discretion. The Declaratory Judgment Act authorizes a court to "declare the rights and other legal relations of any interested party" where an actual controversy exists. 28 U.S.C. § 2201(a). The Supreme Court has confirmed that district courts possess "unique and substantial discretion" to entertain such claims. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–

12

90 (1995). The Second Circuit instructs courts to consider whether a declaratory judgment would clarify the legal issues and finalize the controversy, whether it would serve a useful purpose, and whether more efficient or better suited remedies exist, among other factors. *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359–60 (2d Cir. 2003); *Niagara Mohawk Power Corp. v. Hudson River–Black River Regulating Dist.*, 673 F.3d 84, 104–05 (2d Cir. 2012).

Those factors support retaining the claim here. First, a declaration that Defendant's digital storefront must be accessible under the ADA and NYCHRL would materially clarify the parties' ongoing rights and obligations and would reduce future disputes about compliance standards and maintenance. *See Dow Jones*, 346 F.3d at 359–60; *Niagara Mohawk*, 673 F.3d at 104–05. Second, the requested declaration would serve a useful purpose by guiding compliance and facilitating injunctive relief. Third, there is no parallel proceeding that would render declaratory relief duplicative or inefficient, which distinguishes cases where abstention or dismissal is warranted. *Wilton*, 515 U.S. at 286–90.

At a minimum, the claim should not be dismissed at the pleadings stage as "duplicative." The Second Circuit has explained that the relevant inquiry is functional. The question is whether declaratory relief would settle the legal relations in dispute or afford relief from uncertainty. *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993). Where, as here, a declaration would define Defendant's forward-looking obligations concerning accessibility and the scope of lawful conduct on its website, the claim serves a purpose distinct from retrospective liability and should be permitted to proceed alongside injunctive relief. *Id.*; *Dow Jones*, 346 F.3d at 359–60.

For these reasons, the Court should deny Defendant's motion as to the NYCHRL and declaratory judgment claims.

13

## V.    CONCLUSION

Defendant attempts to downplay the struggles and barriers Plaintiff faces when visiting Defendant's Website as trivial. However, the reality for Plaintiff, and those similarly situated, is that the smallest infraction in accessibility for the visually impaired results in an unusable and inaccessible experience. Defendant shows no effort in remediation except for relying on the fact that the current system that led to the filing of this lawsuit is adequate. Plaintiff's allegations already cut against that and sufficiently establish claims that should proceed in this Court. For the reasons set forth above, Defendant's motion to dismiss should be denied in its entirety.

Dated: January 8, 2026                                                Respectfully Submitted,

                                                                               **STEIN SAKS, PLLC**

                                                                               _/s/ Rami Salim_

                                                                               Rami Salim, Esq.

## **CERTIFICATE OF SERVICE**

Rami Salim, Esq., declares, pursuant to 28 U.S.C. § 1746, as follows:

1. I am an attorney with the firm of Stein Saks, PLLC, attorneys for Plaintiff Rhondine Melendez.

2. On January 8, 2026, I caused a true copy of the within Plaintiff's Opposition To Defendant Raaka Chocolate, Inc.'s Motion To Dismiss to be served upon counsel for Defendant via e-mail to:

>Leo Kayser, III, Esq.
>Kayser & Redfern, LLP
>Email: lkayser@515law.com

3. I declare under penalty of perjury that the foregoing statements are true and correct.

>*/s/ Rami Salim*
>
>Rami Salim, Esq.